FOR PUBLICATION

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **LEXINGTON INSURANCE COMPANY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil No. 2005-112** |
| | ) | |
| **HOVENSA, LLC** | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | consolidated with |
| **HOVENSA, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **LEXINGTON INSURANCE COMPANY,** | ) | |
| | ) | **Civil No. 2005-114** |
| Defendant. | ) | |
| _____ | ) | |

**ATTORNEYS:**

**Mark E. Cohen, Esq.**
Boston, MA
    *For Lexington Insurance Company.*

**Andrew C. Simpson, Esq.**
St. Croix, U.S.V.I.
    *For Lexington Insurance Company.*

**Douglas L. Capdeville, Esq.**
St. Croix, U.S.V.I.
    *For HOVENSA, LLC.*

**Mindy G. Davis, Esq.**
**Arden B. Levy, Esq.**
Washington, D.C.
    *For HOVENSA, LLC.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court are the respective motions of Lexington Insurance Company ("Lexington") and HOVENSA, LLC ("HOVENSA") for summary judgment on HOVENSA's breach of contract claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lexington is an insurer incorporated in Delaware with its principal place of business in Massachusetts.

HOVENSA is a Virgin Islands limited liability company that owns and operates a refinery on St. Croix, U.S. Virgin Islands. Jacobs Industrial Maintenance Company, LLC ("Jacobs Maintenance") is a Virgin Islands limited liability company. Jacobs Maintenance is owned by Jacobs Engineering Group, Inc. ("Jacobs Engineering"), which is incorporated in Delaware and has its principal place of business in California (Jacobs Maintenance and Jacobs Engineering are collectively referred to as "Jacobs").

Jacobs Maintenance contracted to perform maintenance work at HOVENSA's refinery from September 1999 until September 2002. Pursuant to that arrangement, Jacobs Maintenance purchased employment liability coverage from Lexington for itself, certain affiliates, and HOVENSA for claims arising out of the maintenance contract. One of the policies provided coverage from September 30, 2000 through September 30, 2001. Another provided coverage

from September 30, 2001 through September 30, 2002 (together, the "Lexington Policies" or the "Policies").[1] The Lexington Policies have a combined total coverage limit of $6 million.

Between 2000 and 2002, several Jacobs Maintenance employees sued Jacobs Maintenance, alleging workplace discrimination. HOVENSA was named as a defendant in most of those lawsuits. Lexington agreed to defend and to indemnify Jacobs and HOVENSA for claims in many of those suits. By June 2005, Lexington had spent $2,414,396.33 in connection with defending and settling some of those suits. As a result, $3,585,603.67 remained under the Lexington Policies. At that time, there were 17 remaining employee suits pending against HOVENSA and Jacobs, most of which named both parties as defendants.

In the Spring of 2005, settlement efforts were undertaken to resolve 13 of the underlying lawsuits. Four actions were excluded from settlement talks. Two of those named both Jacobs and Hovensa as defendants, and two named Jacobs only. Lexington informed HOVENSA and Jacobs that it would not settle any claims unless both HOVENSA and Jacobs consented to any such settlement. HOVENSA claims that it reached a proposed settlement (the "proposed settlement") of the 13 suits. Jacobs did not consent to the proposed settlement. In June 2005, HOVENSA demanded that

---

[1] Lexington sold additional policies to Jacobs Maintenance. Those policies are not at issue in this matter.

Lexington tender the remaining policy limit to pay for the proposed settlement. Lexington declined, stating that it could not exhaust the policy limits for a settlement, which Jacobs did not approve. On June 28, 2005, settlement negotiations ended.

On August 5, 2005, Lexington filed a statutory interpleader action, pursuant to 28 U.S.C. § 1335 (the "interpleader action"). Lexington alleged that additional defense and liability costs incurred in connection with the underlying lawsuits would likely exceed the Policies' coverage limits. Named as defendants were Jacobs Maintenance, Jacobs Engineering, HOVENSA, those three entities' attorneys, as well as the parties in the underlying lawsuits and their attorneys. Lexington filed a bond in the amount of $3,585,603.67, which represented the remaining limit under the Lexington Policies. It sought a discharge from liability in connection with the underlying lawsuits and a determination of the parties' rights with respect to the Policies' remaining coverage limit.

Hovensa filed counterclaims in the interpleader action. HOVENSA sought a declaration that Lexington was obligated to tender the remaining limits under the Lexington Policies to cover a settlement with the underlying plaintiffs. HOVENSA also alleged that Lexington breached its contractual obligations by refusing to tender the remaining limits. Jacobs also filed counterclaims in the interpleader action. Jacobs sought damages

for breach of contract and breach of the implied covenant of good faith and fair dealing. Lexington and Jacobs reached a settlement of Jacobs' claims, which were dismissed.

On August 8, 2005, three days after Lexington filed its interpleader action, HOVENSA commenced an action against Lexington (the "breach of contract action"). In that action, HOVENSA made the exact same claims as its counterclaims in the interpleader action.

By order dated March 28, 2007, the Court consolidated the interpleader and breach of contract actions.

In April, 2007, HOVENSA, Jacobs and the underlying plaintiffs agreed to settle most of the underlying lawsuits for $10.6 million. Pursuant to that settlement, HOVENSA and Jacobs agreed to share equally any settlement costs in excess of Lexington's interpleader bond. The parties subsequently stipulated to the discharge of the bond. After the Court discharged the bond, Lexington allocated $3,585,603.67 toward the settlement.

Lexington and HOVENSA now both seek summary judgment on HOVENSA'a breach of contract claim against Lexington. The Court has since heard the parties' arguments on the motion.

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. ANALYSIS

At the summary judgment hearing, counsel for Lexington

argued that a recent decision not cited in either party's briefs, *Prudential Insurance Company of America v. Hovis*, controls this case and forecloses HOVENSA's breach of contract claim. 553 F.3d 258 (3d Cir. 2009). The Court ordered the parties to brief *Prudential*'s effect on this matter, and the parties complied. The Court will decide as a preliminary matter whether its application precludes HOVENSA's claim.

In *Prudential,* Robert Hovis ("Hovis"), a Prudential employee, sold life insurance to Bonnie Shall ("Shall"). The policy listed Shall's children as the beneficiaries of the death benefits.

Shall and Hovis later became romantically involved. *Id.* at 259. During the course of the relationship, Shall became terminally ill. Thereafter, Hovis filed forms on Shall's behalf to change the owner of the policy from Shall to himself, and to change the beneficiaries from Shall's children to himself. *Id.* at 260. Hovis' request was in conflict with Prudential's internal policy, and as a result the company investigated it. *Id.* During the pendency of that investigation, Shall died. *Id.*

Hovis and Shall's children each sought the proceeds of the policy. *Id.* at 260-61. Prudential, faced with conflicting stake claimants, filed an interpleader action. Hovis counterclaimed, alleging Prudential had acted negligently and in bad faith and that it had breached a fiduciary duty in processing the policy

changes. *Id.* at 261. The District Court ruled that the interpleader action protected Prudential from liability for its handling of the requested policy changes.

The United States Court of Appeals for the Third Circuit was asked to decide whether "a valid interpleader action shield[s] a stakeholder from further liability to the claimants not only with respect to the amount owed, but also with respect to counterclaims brought by the claimants." *Id.* at 259. The Third Circuit affirmed the District Court. The appellate court held that an interpleader action can shield a stakeholder from liability "where the stakeholder bears no blame for the existence of the ownership controversy and the counterclaims are directly related to the stakeholder's failure to resolve the underlying dispute in favor of one of the claimants." *Id.*

To determine whether Lexington is shielded from liability, the Court will first assess whether Lexington is blameworthy for the controversy over the remaining policy funds.

A stakeholder is "[a] disinterested third party who holds money or property, the right to which is disputed between two or more other parties." *Black's Law Dictionary* 1534 (9th ed. 2009). Insurance companies are often stakeholder plaintiffs in interpleader actions because they frequently seek resolution of a dispute in which they have no interest, seeking court guidance on the proper distribution of policy limits. *See, e.g.*, *Transamerica*

*Premier Ins. Co. v. Growney*, No. 94-3396, 1995 U.S. App. LEXIS 31836, at *3-4 (10th Cir. Nov. 13, 1995) (unpublished) ("the plaintiff has . . . facilitated the efficient resolution of a dispute in which it has no interest (other than avoiding liability for an erroneous distribution of the stake), to the benefit of the competing claimants--the true disputants . . . ").

Lexington is just such a stakeholder. Here, numerous claims had been filed against Jacobs and HOVENSA, which Lexington agreed to defend and/or indemnify. Some claims were settled, but many remained pending. The majority of the suits that remained pending named both Jacobs and HOVENSA as defendants. In settling many of the claims, Lexington had exhausted a significant portion of the policy limits.

Lexington was asked to tender the remaining limits toward a settlement of which one of it's two insureds did not approve. Lexington neither created that dispute, nor fostered it. Indeed, unlike "a tortfeasor, facing claims from multiple parties . . . using the interpleader device to cap its liability," *Prudential*, 553 F.3d at 263 n. 4, Lexington admitted liability and tendered the Policies' limits to the Court when it filed the interpleader action. The rule allowing only blameless interpleader plaintiffs protection from counterclaims defines the concept of fault for the stake controversy quite narrowly. *See, e.g.*, *Great Am. Ins. Co. v. Bank of Bellevue*, 366 F.2d 289, 293-95 (10th Cir. 1966)

(denying surety interpleader protection against some stake claims, by upholding dismissal of those claims without prejudice, where surety had failed to plead and deposit entirety of stake funds available); *Holcomb v. Aetna Life Ins. Co.,* 228 F.2d 75, 82 (10th Cir. 1956) ("a complainant in an action in the nature of interpleader must act in good faith. But the facts pleaded in the complaint do not disclose a tort on the part of Aetna. Neither does the complaint disclose on its face any lack of good faith on the part of Aetna in instituting the action.").

Had Lexington undertaken any effort to resolve the distribution conundrum in favor of either insured, necessarily it would have placed itself in an untenable position. Under the circumstances, Lexington's decision to file an interpleader action was an appropriate course to avoid an erroneous distribution of the stake. *See, e.g.*, *Prudential,* 553 F.3d at 263-64 ("insofar as there was a genuine dispute over entitlement to the insurance proceeds . . . the interpleader action was properly brought" (footnote omitted)).[2]

Having determined that Lexington is not responsible for the dispute over the stake, the Court must next determine whether the

---

[2] To the extent that HOVENSA argues that Lexington was blameworthy for diminishing the Policies' limits, that argument is wanting. A portion of the Policies' limits had been used to settle some of the outstanding claims against HOVENSA and Jacobs. However, the funds expended were paid towards settlements of which both HOVENSA and Jacobs approved.

counterclaims are related to Lexington's failure to pay the policy limits toward the proposed settlement, as requested by HOVENSA. In *Prudential,* the counterclaims that were found to relate to the interpleader action were a result of the insurer's alleged failure to pay the insurance proceeds as requested by a counterclaimant. *Id.* at 265 ("Here, each of Hovis's counterclaims concern Prudential's failure to resolve its investigation in his favor and pay out the life insurance proceeds to him. . . . As such, none of the counterclaims is truly independent of who was entitled to the life insurance proceeds, which is the issue the interpleader action was brought to settle.")

Like the insured in *Prudential*, the gravamen of HOVENSA's breach of contract claim is that Lexington did not tender the Policies' limits to pay the settlement HOVENSA approved. As such, HOVENSA's claims are related to Lexington's failure to tender the policy limits. Moreover, HOVENSA has admitted that, had Lexington "complied with its legal and contractual obligations to pay the remaining policy limits to HOVENSA toward settlement of the Underlying Claims, HOVENSA would not . . . have brought its counterclaims for declaratory judgment and breach of contract." (HOVENSA's Opp. to Mot. for Discharge and Injunction, 2).

As the insurer was in *Prudential,* Lexington too is shielded from liability. Accordingly, HOVENSA's breach of contract claim

must fail as a matter of law. *See, e.g.*, *Id*. at 265 ("To allow Prudential to be exposed to liability under these circumstances would run counter to the very idea behind the interpleader remedy--namely, that a stakeholder [should] not [be] obliged at his peril to determine which claimant has the better claim. Put another way, where a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty.") (quotations and citations omitted, some alterations in original).[3]

---

[3] HOVENSA also argues that *Prudential*'s reasoning does not protect Lexington from liability because HOVENSA's claim does not involve policy ownership. HOVENSA reads *Prudential*'s use of the term "ownership" to mean ownership of the insurance policy, as opposed to ownership and control of the Policies' benefits. However, the *Prudential* court used the term "ownership controversy" to describe a dispute over the stake, or the benefits of the insurance policy. *Cf. Prudential,* 553 F.3d at 265 ("What we hold here is that where a stakeholder is blameless with respect to the existence of the ownership controversy, the bringing of an interpleader action protects it from liability to the claimants both for *further claims to the stake* and for any claims directly relating to its failure to resolve that controversy.") (emphasis supplied).

## IV. CONCLUSION

The Court finds that there are no material facts in dispute and that Lexington is entitled to judgment as a matter of law. As such, Lexington's motion for summary judgment will be granted. HOVENSA's motion for summary judgment will be denied. An appropriate order accompanies this opinion.

S\_____
**CURTIS V. GÓMEZ**
**Chief Judge**